MORTON v. SMITH HOISTING CO. et al.

(Supreme Court, Appellate Division, Second Department.   March 5, 1915.)

1. WITNESSES (§ 380*)—IMPEACHING OWN WITNESS—TESTIMONY ON FORMER TRIAL.

   Plaintiff may not, on his witness testifying differently from what he did on a former trial, introduce the former testimony, either as primary evidence or to impeach his witness.

   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1210–1219; Dec. Dig. § 380.*]

2. NEGLIGENCE (§ 2*)—ACTS CONSTITUTING.

   Where M., the servant of one subcontractor, in drawing up material in the construction of a building, had ample room to land it without hitting anything, W., servant of another subcontractor, was not negligent, as regards liability to the injured servant of the general contractor, in not noticing and giving warning in the few seconds after M.'s actual negligence, or in not anticipating the negligence and giving warning.

   [Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 3, 4;   Dec. Dig. § 2.*]

Appeal from Trial Term, Kings County.

Action by Annie Best Morton, administratrix of Edward Morton, deceased, against the Smith Hoisting Company and Milliken Bros., Incorporated.   From a judgment for plaintiff, and from an order denying a motion for new trial, defendants appeal.   Reversed, and new trial granted.

See, also, 161 App. Div. 939, 145 N. Y. Supp. 1134.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and PUTNAM, JJ.

James S. Darcy, of New York City, for appellant Smith Hoisting Co.

William B. Davis, of New York City, for appellant Milliken Bros., Inc.

Philip A. Brennan, of Brooklyn (Frederick S. Lyke, of Brooklyn, on the brief), for respondent.

THOMAS, J.   A large force of men were making a building.   The fourth floor was only in iron frame, the parts of which made subdivisions called "panels."   The one in question was some 17 feet long in a north and south direction and 6½ feet wide.   Defendant Milliken Bros.' servant, Watson, facing south, sat on the easterly longitudinal beam, called a "filler-in beam"—one that ran between two girders. Molasky, the servant of the Smith Hoisting Company, stood facing

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs  1907 to date, & Rep'r Indexes

easterly on the opposite side, one foot on the westerly filler-in beam, and one foot on a board that had been placed across the panel, in which position he was drawing up by means of a rope a wooden head piece of an elevator. It was variously stated to be 7 feet and 10 feet in length and weighed about 100 pounds, perhaps less. As it was drawn up to him, he turned it across his leg to land it on some boards spanning the panel, and, as the jury has found, it came in contact with some tie rods placed diagonally across the northwesterly or northeasterly corner of the panel, whereby they were caused to fall—one upon the plaintiff's decedent, causing his death. Watson shortly before had placed four tie rods across the corner, but had taken one for the purpose of inserting it in the panel, while the others were left behind him, to be taken one by one and connected as Watson progressed with his work. Winkky, then Watson's coservant, was sitting on the same beam on which Molasky stood, but at the south end of it, facing west as I infer, which brought Molasky about 7 feet from him, and so between him and the tie rods, while, as this witness states, Watson was on the other filler-in beam across from that on which Molasky stood.

Winkky says that he saw the head piece hit the tie rod which fell upon the man on the story below. This is the entire legal evidence that the head piece collided with a tie rod. Molasky testified that he did not hit the tie rod, and so placed himself with reference to it as to make contact improbable; and he receives some support from Johnson, who, on the third floor, tied on the head piece and watched it ascending. Watson saw Molasky raising the head piece, but did not see the collision, as he might not, as the tie rods were behind him, or maybe behind and to the right of him, in the northwest corner. But the fact beyond doubt is that the tie rod fell in the course of landing the head piece. The testimony of the witnesses is in inextricable confusion. Watson, as a witness on three trials, places himself on the western filler-in beam, and later on this trial, after the same evidence, shifted himself to the eastern beam. He placed Molasky on the same beam as himself, and, although he relocated himself on the easterly beam, he seems to have kept with him Molasky. Watson also placed the tie rods in both the northeasterly and northwesterly corners. Winkky said that he was on the same beam as Molasky, but not on the same beam as Watson, but in the "southeast corner of this elevator opening," which would tend to put him on or near the same beam as Watson. Molasky states that he was on the west beam. No one can reconcile the statements.

The learned counsel for the Smith Hoisting Company urges, with much force, that the location of Molasky was such that the head piece was not long enough to come in contact with the tie rods, which were close to whatever corner they crossed and invaded the space by about one foot. But Molasky had raised 6 or 7 planks, which, as I understand, made the flooring. He said that when he was pulling up the head pieces he was standing "on the south corner and the west beam." But at an earlier trial he testified that he "had planks across the middle of" the opening. Winkky testified that Molasky was "about 6 —about 7 feet away" from him, and that he was not across the panel

from him. That would bring Winkky in the southwest, rather than the southeast, corner. Watson says that a board was across the panel north of the middle of the panel. He was asked:

"Molasky was standing at least 6 feet away from these tie rods, was he not? A. Somewhere around there, more or less, less I should judge"

—and judges that the head piece was about 7 feet long, and he said that it grazed the outside of his right leg, which it could not have done if he was on the west beam. Watson also testified that the tie rods extended a little over a foot into the panel, and that they were "probably 3 feet away" from him, or 4 feet. He says that Molasky was about 2 feet south of him. I am unable to conceive, upon the statement of distances given, how Molasky handled the head piece, even 10 feet long, and weighing 100 pounds, so as to hit the tie rods. But estimates of distances are often so incorrect that it is not always safe to dispute, by calculations founded on them, the definite statement of a witness that he saw the contact of the head piece with the rod.

[1] But the examination of Watson by the plaintiff, who called him, was so erroneous that the finding of the jury against the Smith Hoisting Company cannot stand. Watson testified on this trial that he did not see the head piece strike the rod, but saw the head piece raised, the process of landing it, whereby his leg was grazed, and the fall of the rod on the plaintiff's decedent. Thereupon he was asked whether upon the first trial he did not testify that he actually saw the collision, and later the testimony given on the former trial was received generally, and probably adopted by the jury as primary evidence, or to impeach the witness. In either view it was clearly inadmissible, and it certainly was harmful.

[2] The jury has also found the Milliken Company negligent, in that Watson, "at about the time when Molasky started to raise the" head piece, was warned that the work upon which Molasky was engaged took on a dangerous aspect, "which should have warned Watson of the possibility of an accident resulting from contact between the beam and the tie rods," and in that he "did not give warning against the possible contact between the beam and the tie rods." The court charged:

"Ask yourselves, under all the circumstances of the case, whether Watson was negligent, because in your opinion, with the exercise of reasonable care, he should have seen the danger, and should have given warning against the danger, or should himself have made some efforts to minimize or prevent the danger."

The Smith Company has been found negligent because its servant let the head piece collide with the tie rods, and the Milliken Company because Watson did not appreciate that there was danger from Molasky's manner of handling the head piece, and warn him of the danger, or make "some efforts to minimize or prevent the danger." Accordingly the rods were not negligently deposited; they would not have fallen, unless hit; with ordinary care Molasky could have raised the head piece without disturbing the rods; and yet Watson should have in prudence foreseen that Molasky might through his negligence possibly hit the rods, and have grasped the situation and tried to avert

151 N.Y.S.—69

the results by outcry or action tending to counteract the other's conduct. I discover no reason for such watchfulness by Milliken's servant of Smith's servant lest the latter should be negligent.

The jury must, in considering Molasky, have found that he had room enough to act prudently. Indeed, it is urged here that the space was so abundant that he could not have touched the rods with the head piece. There were nearly 17 feet of space within which to land a stick 10 feet long fastened 4 feet from its end. It was a matter of seconds to turn the stick over the servant's leg, and yet at that precise time, if ever, the peril appeared. The head piece arose, was turned over, grazed Watson's leg, and passed behind him, and hit the rods, if, indeed, it did hit them. But Watson, it is found, should have conceived, in a period briefer than the swift happening, the impending danger, and with priority of word or action stayed or attempted to stay the negligent thrust of the head piece, or he should have noticed that Molasky was drawing up the head piece, and have seen the danger of his final negligent handling, and have told him to beware, or have done something—too indefinite to be suggested. The record, it is thought, does not permit such burden to be placed upon one servant to guard against the consequences of the negligent act of another, done or portending.

The judgment and order should be reversed, and a new trial granted; costs to abide the event. All concur.